IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-CV-01950-LTB-CBS

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Plaintiff,

v.

HOME DEPOT U.S.A. INC., d/b/a The Home Depot, a Delaware Corporation,

Defendant.

---

**HOME DEPOT'S MOTION FOR SUMMARY JUDGMENT**

---

Pursuant to Fed. R. Civ. P. 56, Defendant The Home Depot U.S.A., Inc. ("Home Depot") submits the following Motion for Summary Judgment.

**INTRODUCTION**

Connie Hainline is a former Operations Assistant Store Manager at Home Depot who was discharged in December 2004 for committing two, back-to-back major violations of Home Depot's hiring policies. First, Hainline allowed a new hire to begin work for Home Depot before her background check was completed. Then, just a few weeks later, Hainline assigned a new hire to a job position for which he was not qualified. Hainline admits that she engaged in this conduct and admits that she was aware of Home Depot's policies prohibiting such conduct. Nonetheless, the EEOC argues that Hainline should not have been discharged because her policy violations were accidental.

In this lawsuit, the EEOC alleges that Home Depot discharged Hainline in retaliation for an EEOC charge that she filed more than two years before her termination. The EEOC asserts a

single cause of action under Title VII for retaliatory discharge. However, the undisputed evidence demonstrates that Home Depot is entitled to summary judgment as a matter of law for different reasons. First, Hainline did not engage in any protected conduct other than filing her initial EEOC charge in March 2002. Therefore, the EEOC simply cannot demonstrate that there is any causal connection between Hainline's March 2002 EEOC charge and her termination for committing two major hiring policy violations of Home Depot's hiring policies in December 2004 – nearly three years later. Next, there is not a shred of evidence that Home Depot's reason for terminating Hainline – her admitted violations of Home Depot's hiring policies -- is pretextual. As a result, Home Depot is entitled to summary judgment on the EEOC's sole claim and the Complaint should be dismissed in its entirety.

**UNDISPUTED FACTS**

Hainline's employment history at Home Depot.

1. Hainline began working for Home Depot in Arizona as a cashier in 1992. Deposition of Connie Hainline ("Hainline Dep."), Ex. A at 13:22-23, 14:22-24. In 1997, Hainline requested and was granted a transfer to the position of district installation coordinator in Colorado. Hainline Dep. 18:5-7; 19:24-20:10. In 1999, Hainline was promoted to regional installation manager (RIM). In 2001, Home Depot restructured the RIM job so that it required store manager experience. Because Hainline had no experience as a store manager (or even assistant store manager), Home Depot offered Hainline a position as Operations Assistant Store Manager (Ops ASM) at the Glendale, Colorado store with the *same* salary and benefits. Hainline Dep. 23:4-14.

2. Hainline worked as the Ops ASM at the Glendale, Colorado store until March 2002, when she transferred to Ops ASM of the Golden, Colorado store. (30(b)(6) Deposition of Jason Grasser ("Grasser Dep.), Ex. B at 108:13-19. In January 2004, she transferred to Ops ASM of the Evergreen, Colorado store. Grasser Dep. 186:21-187:7. At the Evergreen store, Ms. Hainline reported to Store Manager Pat Swaney, who in turn reported to District Manager Jason Grasser. There were two other managers at the Evergreen store in addition to Hainline and Swaney: Amy Burger was the Human Resources Manager, and Duane Landry was the Merchandizing ASM.

3. Hainline and Swaney were both terminated on December 6, 2004, for violations of Home Depot's Code of Conduct.

<u>Home Depot's hiring policies and Code of Conduct</u>.

4. Home Depot has strict policies regarding hiring and promoting employees that all employees of Home Depot are required to follow. The two hiring policies at issue in this case are set forth in Home Depot's Code of Conduct, which states that the following are major work rule violations, warranting termination on the first offense:

- Assigning an associate to a position before the associate has qualified for the position and passed any appropriate test

- Intentionally allowing new hires to begin work prior to receiving all required pre-employment paperwork, (i.e. negative drug or background screening or before the hire is processed in the AIMS [Associate Information Management] system

Ex. C at EEOC 00507. These hiring policies are also set forth in Home Depot's Standard Operating Procedures (SOPs) entitled "Staffing – External Selection" and "Background Checks."

Exs. D and E.  Home Depot's Staffing SOP states: "**Applicants must not begin work (including Orientation) until successful completion of the drug test and background check has been confirmed.**" Ex. D at 0255. (emphasis in original).  It also states that "Individuals interested in in-store hourly positions are required to successfully complete required questions and pass the employment test." *Id.* at 0249.  Home Depot's Background Check SOP states: "Allowing a new hire to start work or attend orientation prior to receipt of background check and drug results" could "lead to disciplinary action up to and including termination." Ex. E at 0561.

5.      The Code of Conduct separates prohibited conduct into "minor work rule violations" and "major work rule violations."  Ex. C at EEOC00505 and EEOC00509.  Major work rule violations are considered so severe that they warrant termination on the first offense. Ex. C at EEOC 00508.  Both of the hiring policies at issue in this case are considered major work rule violations.  Ex. C at EEOC 00507.

6.      The reason Home Depot considers hiring policy violations to be major work rule violations is because the hiring process is designed to ensure fairness and legality in hiring. Hainline Dep. 32:1-33:5; Ex. D at 0249.  Home Depot requires that candidates be selected based upon their qualifications and not based upon improper or illegal criteria such as friendship, nepotism, or discrimination.  Hainline Dep. 32:1-33:5; Ex. D.  As a result, it is a major work rule violation to hire any candidate who is not qualified, including one who has failed a required test or background check.  Ex. C at EEOC 00507.

7.      All Home Depot employees are required to comply with Home Depot's Standard Operating Procedures and Code of Conduct. Hainline Dep. 36:22-37:2; Ex. C at EEOC 00502.

8. Hainline received Home Depot's Code of Conduct and kept with her a personal copy in which she signed her name. Hainline Dep 24:7-25:21; Ex. C at EEOC 00500. Hainline understood that as a manger, it was not only part of her job to follow the Code of Conduct, but further to ensure that other employees followed it. Hainline Dep. at 25:2-21. Hainline understood that under the Code of Conduct, major work rule violations require immediate termination and had witnessed other employees be terminated for committing major work rule violations. Hainline Dep. 38:14-16; 39:5-21. Hainline read and understood the hiring policy provisions contained in her personal copy of the Code of Conduct. Hainline Dep. 39:22-41:10. Hainline was also aware of the hiring policy SOPs and understood that they were required. Hainline Dep. 44:6-47:3.

<u>Hainline commits two major hiring policy violations within weeks of one another</u>.

9. As Ops ASM, Hainline had direct responsibility for employees in the front end (cashiers, lot attendants), back end (receiving, freight team), and office (computer room, vault). Ex. G. For employees in her departments, Hainline was responsible for recruiting, interviewing applicants, and making hiring recommendations to the Store Manager who had ultimate responsibility for all employees in the store. Hainline Dep. 30:6-16; Ex. G at 0611.

10. To manage the hiring process, Home Depot uses computer systems referred to as the Associate Information Management System "AIMS" and the Job Preference Process "JPP". Deposition of Dawn Nichols ("Nichols Dep."), Exhibit H at 48:13-22; 120:8-11. As Operations ASM, Hainline had access to AIMS and used it to select, interview, and hire employees. Deposition of Amy Burger ("Burger Dep."), Exhibit I at 104:2-9; 130:23-131:16; Ex. J; Ex. O.

11. In August and September 2004, Hainline committed two, back-to-back, major work rule violations of Home Depot's hiring policies.

Hainline allows an employee to begin working for Home Depot who has not completed her background check.

12. Hainline first violated Home Depot policy by allowing an employee named Michelle Addison to begin work for Home Depot before her background check had been completed. On August 22, 2004 Hainline, on the AIMS system, selected Addison as a candidate for the head cashier job. Ex. J. Addison was interviewed and given a conditional offer of employment pending completion of her background check and drug test. Burger Dep. 108:6-18; 196:24-197:9.

13. *Prior* to completion of Addison's background check, Hainline contacted Addison and asked her to come into the Evergreen store to complete her new hire paperwork. Hainline Dep. 59:4-18; 60:12-17. Addison arrived at the Evergreen store on August 30, 2004, completed her new hire paperwork, and was scheduled to begin work for Home Depot at orientation the following day. Ex. K; Hainline Dep. 60:12-61:4; 56:22-25; 57:17-24; 58:10-24. On August 31, *after* Addison had begun work, her background check results were returned showing that Addison was ineligible for hire due to a felony conviction.[1] Exs. M and N.

14. By allowing Addison to begin work prior to completion of her background check, Hainline committed a major work rule violation of Home Depot's hiring policy, which clearly states: "**Applicants must not begin work (including Orientation) until successful completion**

[1] Addison appealed the background check results and, because no records showing the circumstances of her felony conviction could be obtained within 30 days, was eventually hired by Home Depot. Ex. L.

**of the drug test and background check has been confirmed.**" Ex. D at 0255. (emphasis in original).

15. In violation of Home Depot's policies, Hainline admittedly never once checked to see whether Addison's background check was complete *before* allowing Addison to begin work. Hainline Dep. 57:17-24; 58:10-24; 60:12-61:18; 63:6-64:25. Hainline admitted that she would not have sent Addison to orientation if she had known that Addison's background check was not complete. Hainline Dep. 57:22-24; 58:10-21. Hainline knew that sending Addison to orientation prior to completion of her background check was a violation of Home Depot's Code of Conduct Hainline 72:16-25, yet Hainline failed to check whether Addison's background check was complete. Hainline 63:6-64:25.

<u>Hainline assigns an employee to a position that he was not qualified for</u>.

16. Within weeks of her first violation, Hainline committed a second major violation of Home Depot's hiring policies by assigning a job applicant named Asa Newhouse to a position for which he was not qualified. Under Home Depot policy, in order for a candidate to be assigned to a job position, they must have passed the required test for that job position: "Individuals interested in in-store hourly positions are required to successfully complete required questions and pass the employment test." SOP Staffing – External Selection, Exhibit C at 0250. This policy ensures that candidates are hired based upon qualifications and not other, inappropriate or illegal criteria. It is a major work rule violation to assign an employee to a position for which he is not qualified. Exhibit B at EEOC 00507.

17. On September 12, 2004, using the AIMS system, Hainline selected Asa Newhouse as a candidate for a job as a parking lot attendant. Ex. O. The next day, September

13, 2004, Hainline interviewed Newhouse.  Ex. O.  Newhouse's job application, interview form, and hiring checklist all originally stated that Newhouse was applying and being considered for a lot attendant job.  Exs. P, Q and R; Ex. R at 0240.

18.     However, during his interview, Newhouse stated to Hainline that he did not want the lot attendant job, but wanted to work on the night freight team.  Hainline Dep. 99:2-13. Hainline admits that during Newhouse's interview, she crossed out "lot" on Newhouse's application, interview form, and hiring checklist and wrote in "freight team."  Hainline Dep. 97:6-18.  Hainline proceeded to interview Newhouse for the freight team (using the lot attendant interview form) and then recommended Newhouse be hired as a freight team associate. Ex. R at 0240; Hainline Dep. 99:14-18; 108:1-109:6.

19.     Newhouse was *not* qualified for the freight team position.  He had failed the sales test required for freight team employees. Burger Dep. 206:25-207:19; 209:12-210:4.  Hainline admitted that she knew that in order to be considered for freight team, candidates were required to pass the applicable test. Hainline Dep. at 102:13-23.  Hainline also knew that Home Depot policy prohibits hiring an applicant for freight team who had not passed the required test. Hainline Dep. 102:20-23.  Hainline also knew that it was a major work rule violation punishable by immediate termination to assign a candidate to a position for which he had not passed the required test. Hainline Dep. 103:6-14.

20.     Nonetheless, Hainline never once checked to see whether Newhouse had passed the required test before, during or after she interviewed him for freight team, recommended that he be hired for freight team, and completed his hiring checklist assigning him to freight team. Hainline Dep. 100:17-25; 103:15-18; 108:1-109:6.

21.     Hainline admitted that if she had known that Newhouse failed the test she would not have interviewed or hired him for the freight team because that would violate Home Depot's policy.  Hainline Dep. 130:6-131:3.  Since Newhouse did not meet the minimum qualifications for the freight team position, the AIMS system would not allow Newhouse to be paid as a freight team associate.  Accordingly, the Store HR manager, Amy Burger, who had been on vacation during Hainline's violation, contacted Newhouse and offered him the lot attendant position, which he accepted. Burger calendar attached as Ex. S, and Burger Dep. 206:25-208:8.

Home Depot investigates Hainline's violations and terminates Hainline's employment in accordance with the Code of Conduct.

22.     If Home Depot management suspects a violation of the Code of Conduct, the Code requires that an investigation be conducted to determine whether a violation occurred, the nature of the violation, and who committed the violation.  Ex. C at EEOC 00504.  In addition, if the violation warrants termination of a salaried manager with more than 10 years of tenure, the Code of Conduct requires approval by the Vice President of Human Resources and the Divisional Vice President.  Ex. C at EEOC 00509.

23.     As required by the Code of Conduct, Home Depot conducted an investigation into Hainline's two violations of hiring policy.  Ex. T. Home Depot gathered witness statements from those employees who had relevant information including Michelle Addison, Wendy Leyshock, and Asa Newhouse.  Ex. U.  Pertinent documents were gathered, including documents related to Addison's background check and orientation and Newhouse's interview and new hire paperwork.  Exs. L-N, and P-R.  Amy Burger prepared a detailed report of each incident.  Ex. T. Approvals for termination were obtained from numerous managers including District Manager

Jason Grasser, Vice President Tim Pfeiffer, District Human Resources Manager Dawn Sorenson,

Employment Practices Manager Mike McEnroe, Human Resources Vice President Reg Garrett.

Deposition of Mike McEnroe ("McEnroe Dep."), Exhibit V at 149:3-8; 151:14-21.

      24.    Hainline was questioned about the incidents first by Amy Burger at the time the

incidents occurred.  Hainline Dep. 68:23-69:16; 115:5-116:25.  Then, on November 24, 2004,

Hainline was questioned by District Manager Jason Grasser.  Hainline Dep. 177:5-178:12.

Grasser asked Hainline for her perception of the incidents and Hainline responded by admitting

that the incidents occurred, but claiming that because she had not checked to see whether

Addison's background check had been completed or whether Newhouse had passed the required

test, that she was not culpable.  Hainline Dep. 176:3-180:17. At the conclusion of the November

24, 2004 interview, Hainline was placed on administrative leave in accordance with the Code of

Conduct.  Ex. C EEOC 00504.  Hainline was terminated on December 3, 2004 for committing

two major work rule violations of Home Depot's Code of Conduct hiring policies.

Hainline claims retaliation for 2002 charge.

      25.    In March 2002, Hainline filed an EEOC charge alleging discrimination and sexual

harassment during the time she worked as a regional installation manager in 2001.  Between the

filing of her charge and eventual settlement, Hainline met with her attorney 4-6 times and

attended one mediation session at the EEOC sometime in 2003.  Hainline Dep. 134:3- 138:21.

Hainline was never deposed, she was never interviewed, she did not attend any other meetings or

witnesses interviews, and she did not provide documents or witness statements in furtherance of

her charge.  Hainline Dep. 133:l-24–138:l:21.  In July 2004, Home Depot and the EEOC settled

Hainline's charge along with 37 others by entering into a Consent Decree.  A proposed Consent

Decree containing Hainline and the other charging parties' settlements was executed by the Home Depot and the EEOC and Home Depot on August 24, 2004. Ex. F. Hainline received a settlement check for the previously agreed-upon amount in early November 2004. Hainline Dep. 140:8-10.

26. The EEOC alleges in this case that Hainline was terminated on December 3, 2004 in retaliation for receiving her settlement check in early November 2004. Complaint at p. 4; Hainline Dep. 132:14-17; 139:23-140:13.

## ARGUMENT

### I. Legal Standard for Retaliation Claim.

The EEOC alleges that Hainline was terminated not because of her two undisputed violations of Home Depot's hiring policies, but in retaliation for filing a charge of discrimination against Home Depot in March 2002.

Where, as in this case, there is no direct evidence of retaliatory motive, a plaintiff may attempt to prove retaliation using circumstantial evidence under the burden-shifting approach set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). Under this approach, the plaintiff bears the initial burden to establish a *prima facie* case. *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1328 (10th Cir. 1999); *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 985-86 (10th Cir. 1996). To establish a *prima facie* case of retaliation under Title VII, the EEOC must show that: (1) Hainline engaged in a protected activity under Title VII; (2) Home Depot took an adverse employment action against her; and (3) there was a causal connection between her protected activity and the adverse action.

*Mattioda v. White*, 323 F.3d 1288, 1293 (10th Cir. 2003); *Burrus v. United Tel. Co. of Kansas, Inc.*, 683 F.2d 339, 343 (10th Cir. 1982).

If the EEOC establishes its *prima facie* case, the burden of production shifts to Home Depot to offer a legitimate, non-retaliatory reason for Hainline's termination. *Id.* Once Home Depot offers a legitimate, non-discriminatory reason for the termination, the EEOC must set forth specific facts showing that Home Depot's reason is a pretext for retaliation in violation of Title VII. *Id.* In order to defeat summary judgment, the EEOC must identify specific facts in affidavits, deposition transcripts, or other exhibits, that show that Home Depot's reason for terminating Hainline was not its true reason. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).

Home Depot is entitled to summary judgment in this case because: (1) the EEOC cannot meet its burden of establishing a *prima facie* case of retaliation, and (2) the EEOC fails to present specific facts showing that Home Depot's proffered reason for terminating Hainline – her admitted violations of Home Depot's hiring policies – were pretextual.

## II. The EEOC Cannot Show a *Prima Facie* Case of Retaliation.

If a Plaintiff cannot meet her burden of proving a *prima facie* case of retaliation, summary judgment is warranted as a matter of law. *Steele v. Kroenke Sports Enterprises, L.L.C.*, 2008 WL 360614, *9 (10th Cir. Feb. 11, 2008) (affirming summary judgment where Plaintiff failed to show *prima facie* case); *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, *1180 (10th Cir. 2006) (affirming summary judgment based on failure to show causation element of *prima facie* case). Here, the EEOC cannot show a *prima facie* case of retaliation because it cannot show (1) that Hainline engaged in protected activity after filing her initial charge of

discrimination in March 2002, or (2) that there is a causal connection between any protected activity and Hainline's December 2004 termination for violating company hiring policies.

**A. Hainline did not engage in protected activity after filing her March 2002 charge.**

The EEOC cannot show that Hainline engaged in protected activity after she filed a charge of discrimination in March 2002, nearly three years before she was terminated. Title VII's anti-retaliation provision "forbids an employer from 'discriminat[ing] against' an employee ... because that individual 'opposed any practice' made unlawful by Title VII or 'made a charge, testified, assisted, or participated in' a Title VII proceeding or investigation." *Burlington N. & Santa Fe Ry. Co. v. White,* 126 S. Ct. 2405, 2408 (2006) (quoting 42 U.S.C. § 2000e-3(a)). Although filing a charge of discrimination with the EEOC is without question protected activity, merely awaiting resolution of a previously-filed charge is not. *Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1208–09 (10th Cir. 2007) (awaiting a decision on a previously-filed charge does not constitute protected activity); *Kratzer v. Collins*, 295 F. Supp. 2d 1005 (N.D. Iowa 2003) (fact that employee's complaint was pending at time of his termination did not support retaliation claim). Likewise, actions taken by the EEOC in which the employee takes no part, or about which the employer is not aware do not constitute protected activity. *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (rejecting "utterly implausible suggestion" that EEOC's issuance of a right-to-sue letter, an action in which the employee takes no part, is a protected activity of the employee).

In addition, Courts have repeatedly held that settlement or attempted settlement of a pending charge does not constitute protected activity. *Schnelle v. Veneman*, 129 Fed. Appx. 403 (10th Cir. 2005) (basing retaliation claim on date of filing of EEOC charge not date of settlement

agreement); *Tennessee Valley Authority v. Frady*, 134 F.3d 372 (6th Cir. 1998) (filing complaint is protected activity, not entering into settlement agreement); *Jackson v. Baxter Int'l, Inc.*, 2007 WL 4510258, *5 (N.D. Ohio 2007) (making a settlement demand is not a protected activity); *Worster v. Carlson Wagon Lit Travel, Inc.*, 353 F. Supp. 2d 257, 271 (D. Conn. 2005) (settlement discussions the day before the plaintiff's termination do not support retaliation claim).

In this case, Hainline filed her charge of discrimination in March 2002, and received a settlement check from Home Depot in November 2004. Other than filing her charge, Hainline did not engage in any protected activity. UF 25. Hainline simply awaited the resolution of her charge, which Home Depot and the EEOC agreed to on August 24, 2004. UF 25. Under these circumstances, the only protected activity Hainline engaged in was filing her initial charge in March 2002, nearly three years prior to her termination.

**B. The EEOC cannot show a causal connection between Hainline's protected activity and her termination.**

The EEOC also cannot meet its burden of showing a *prima facie* case of retaliation because it cannot show a causal connection between Hainline's protected activity in March 2002 and her termination nearly three years later. A causal connection for purposes of a *prima facie* case of retaliation can be established by evidence of circumstances justifying an inference of retaliatory motive, such as protected conduct closely followed by an adverse action. *O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001) (quoting *Burrus,* 683 F.2d at 343). However, "[u]nless there is <u>very close</u> temporal proximity between the protected activity and the retaliatory conduct, the plaintiff must offer additional evidence to establish causation." *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir.2001) (emphasis added).

The Tenth Circuit has repeatedly held that more than three months is too long to infer a causal connection. *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (three-month period alone is insufficient to establish causation); *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir.2001) ("a three-month period, standing alone, is insufficient to establish causation"); *Antonio v. Sygma Network, Inc*., 458 F.3d 1177, 1182 (10th Cir. 2006) (termination nine months after complaint is too temporally remote to support an inference of causation). Here, because Hainline's EEOC charge was filed almost three years before her termination, the EEOC attempts to argue that Hainline's mere receipt of a settlement check in November 2004 constitutes protected activity.

Courts have repeatedly disallowed attempts similar to the EEOC's in this case to establish a causal connection between the settlement of an EEOC charge and an adverse employment action. *Tennessee Valley Authority v. Frady*, 134 F.3d 372 (6th Cir. 1998). In *Frady*, the Sixth Circuit rejected the plaintiff's effort to establish temporal proximity based on the date of settlement of a charge rather than the date of filing of the charge. Frady had filed a complaint under the whistleblower protection provisions of the Energy Reorganization Act in December 1990, and settled that complaint in June 1991. *Id.* He then alleged that his employer retaliated against him by failing to hire him for several openings he had applied for in August and September 1991.

The Sixth Circuit refused to infer a causal connection based upon the 2-3 months between settlement of Frady's prior complaint and the failure to hire, finding instead that the operative date should be Frady's filing of the complaint:

> The Secretary chose to determine temporal proximity based on Frady reaching a settlement agreement with TVA in June 1991, two or three months before his

> non-selection by the committees. We believe that the date of the complaint, January 1991, is the more appropriate date to use, because 1) unlike a settlement agreement, a complaint is clearly a protected activity under the ERA, and 2) common sense dictates that employees are much more likely to be retaliated against for filing a complaint against their employer than for resolving the dispute with the employer by reaching a settlement agreement.

*Id.* at *3 n.1; *see also Schnelle v. Veneman*, 129 Fed. Appx. 403 (10th Cir. 2005) (calculating proximity between protected activity and termination based on date employee filed EEOC complaints rather than date he signed agreements resolving complaints); s*ee also Worster v. Carlson Wagon Lit Travel, Inc.*, 353 F. Supp. 2d 257, 271 (D. Conn. 2005) (fact that defendant employer engaged in settlement discussions the day before the plaintiff's termination is not sufficient to show a causal connection).

In this case, Hainline filed her charge in March 2002, and was terminated in December 2004, well over two years later. Plainly, the lapse of nearly three years between these two events bars any effort to establish a causal connection based on temporal proximity. *Anderson*, 181 F.3d at 1179. The EEOC's argument disregards the date of filing of Hainline's charge, and instead attempts to rely on Hainline's mere receipt of a settlement check from Home Depot in November 2004 from which to infer a causal connection. *Compl't* ¶21.

Contrary to the EEOC's effort to avoid the lengthy delay between Hainline's protected activity and her termination, the operative date for purposes of establishing temporal proximity is the date she <u>filed</u> her charge, not the date she received a settlement check. Any incentive Home Depot might have had to retaliate against Hainline occurred at the time it became aware, through receipt of her charge, that Hainline was making alleging discrimination. Hainline's receipt of a check in November 2004 provided no additional incentive for Home Depot to retaliate against her. Under the case law described above, Hainline's settlement of her charge did not constitute

protected activity, and cannot support an inference of causation. As a result, the EEOC's attempt to meet its burden of proof to show causation fails as a matter of law and Home Depot is entitled to summary judgment.

## III. The Retaliation Claim Also Fails Because The EEOC Cannot Show That Hainline's Termination Was Pretextual.

Even if the EEOC could establish a *prima facie* case, its retaliation claim still fails because Home Depot has articulated a legitimate, non-discriminatory reason for terminating Hainline's employment (her admitted hiring policy violations) and the EEOC cannot satisfy its burden of showing that its reason was pretextual.

### A. Home Depot has articulated a legitimate, non-discriminatory reason for Hainline's termination.

If a *prima facie* case is proved, the employer need only articulate a legitimate, non-discriminatory reason for the termination. The employer is not required to prove the absence of retaliatory motive; rather, the employer need only offer evidence of a legitimate, non-discriminatory reason that would dispel the inference of retaliation. *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1394 (10th Cir. 1997).

Here, Home Depot has clearly articulated a legitimate, non-discriminatory reason for Hainline's termination. Hainline committed two, back-to-back, major work rule violations of Home Depot's hiring policies. Hainline admits: (1) that she is required to comply with all provisions of the Code of Conduct, (2) that under the Code of Conduct, allowing an employee to begin work prior to completion of a background check is a major work rule violation, (3) that under the Code of Conduct assigning an employee to a position for which he is not qualified is a major work rule violation, (4) that she allowed Addison to begin work prior to completion of her

background check, and (5) that she assigned Newhouse to the freight team before he had passed the freight team test. UF 7, 8, 13, 15, 18-20. As a result, Home Depot has met its burden to produce a legitimate, non-discriminatory reason for Hainline's termination and the burden shifts back to the EEOC to prove that Home Depot's articulated reason is pretext.

**B. The EEOC cannot show that Hainline's termination was pretextual**.

The undisputed facts show that the EEOC cannot meet its burden of proving that Home Depot's legitimate, non-discriminatory reasons for Hainline's termination are pretextual.

An employee may show pretext based on "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's claimed legitimate, non-discriminatory reason such that a rational trier of fact could find the reason unworthy of belief. *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, *1113 (10th Cir. 2007). However, in order to prove pretext, a plaintiff must offer proof of a disturbing procedural irregularity that is "so idiosyncratic or questionable" as to show that the employer's articulated reason is not its true reason. *Estate of Daramola v. Coastal Mart, Inc*., 170 Fed. Appx. 536, 545 (10th Cir. 2006). "[A]s a matter of law, [an employer's] mere knowledge of the plaintiff's protected activity prior to an adverse employment action does not establish a retaliatory motive." *Sanchez v. Henderson,* 188 F.3d 740, 748 (7th Cir.1999).

In determining whether an employer's decision was pretextual, the relevant inquiry on summary judgment is whether the employer honestly believed that the employee engaged in misconduct, not whether that belief was true or correct. *Sorbo v. United Parcel Service*, 432 F.3d 1169, 1178 (10th Cir. 2005) (the relevant inquiry concerns the belief of the employer that the employee engaged in misconduct, not whether the actual facts may have been otherwise);

*Kendrick v. Penske Transp. Services, Inc.*, 220 F.3d 1220, 1231 (10th Cir. 2000). A claim of pretext requires that the Court look at the facts as they appear to the manager making the decision to terminate. *McKnight v. Kimberly Clark Corp.,* 149 F.3d 1125, 1129 (10th Cir.1998) (no pretext where employer discharged plaintiff based on allegations it believed to be true, even though plaintiff presented evidence to the court that the allegations may have been false); *E.E.O.C. v. Flasher*, 986 F.2d 1312 n. 12 (10th Cir. 1992) ("[A] mistaken belief can be a legitimate reason for an employment decision and is not necessarily pretextual.").

Furthermore, an employee's own subjective belief that she is not violating company policy has no bearing on the question of pretext. *Timmerman*, 483 F.3d at 1119 (*citing Furr v. Seagate Tech., Inc.,* 82 F.3d 980, 988 (10th Cir.1996)). What matters is whether the company could have reasonably believed that its policy had been violated. *McKnight*, 149 F.3d at 1129 (10th Cir.1998) ("The test is good faith belief."). *Vann Nelson v. City of Chicago*, 2000 WL 1221637, *13 (N.D. Ill. Aug. 21, 2000) (Plaintiff's perception that his mistakes were unintentional fails to raise an issue of fact as to whether employer's stated reason was pretextual).

In her deposition, Hainline could identify only two facts that she contends shows Home Depot's reason for terminating her was pretextual: (1) that her termination occurred within a month of her receipt of a settlement check, and (2) that when she asked her store manager Pat Swaney if she was going to be disciplined for her policy violations, he stated that he was told "not to touch her." Hainline Dep. 141:9-142:5. Neither of these facts, even if true, would show that Home Depot's reason for terminating Hainline was pretext.

First, as set forth above in Section II, the proximity of Hainline's termination to her receipt of a settlement check does not show pretext. Even if temporal proximity exists for purposes of establishing causation in a *prima facie* case, it does not necessarily support a finding of pretext. *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir.1999) (temporal proximity present for purposes of *prima facie* case but insufficient to survive summary judgment on issue of pretext); *Garcia v. Rumsfeld*, 119 Fed. Appx. 196, 2004 WL 2823305 (10th Cir. 2004) (gap of four months between employee's complaint and removal of her supervisory responsibilities did not show that employer's reasons were pretext); *Vigil v. Colorado Dept. of Higher Educ.*, 185 F.3d 876 (10th Cir. 1999) ("Temporal proximity of adverse employment action to protected activity is not dispositive in the pretext analysis"). Unless the temporal proximity shows that the employer's proffered reason is unworthy of credence, summary judgment is appropriate. *Vigil*, 185 F.3d 876 (10th Cir. 1999).

Here, the timing of Hainline's termination does not show pretext. Hainline's charge was pending for almost 3 years before she was terminated. UF 25. Instead, the undisputed facts show that Hainline's termination occurred after Home Depot thoroughly investigated her two major hiring policy violations and obtained the required approvals needed to terminate her employment. UF 22-24. Simply put, nothing about the timing of Hainline's March 2002 charge demonstrates that Home Depot's reason for terminating her based upon her major hiring policy violations was a pretext.

<u>Second</u>, the only other reason Hainline could articulate in her deposition for why she believed her termination was pretextual is an alleged comment by Pat Swaney. Hainline claims that in October 2004, about a month after her hiring policy violations, she asked Store Manager

Pat Swaney whether she was going to be disciplined or terminated. Hainline Dep. 78:11-18; 80:22-83:1. Hainline alleges that Swaney told her he was not "allowed to touch her" until the Vice President of Human Resources, Reg Garrett, let him know. Hainline Dep. 87:11- 88:3.

It is unclear exactly how this comment, even assuming it is true, would show that Home Depot's reason for terminating Hainline is pretext. Swaney is a non-decisionmaker who was himself under investigation at the time of the alleged comment, and was terminated at the same time as Hainline for failing to respond when he became aware of Hainline's policy violations. UF 3; Ex. V at 150:21-24. At most, it could be argued that Swaney's comment shows that Home Depot did not want to allow Swaney, who was himself under investigation, to discipline or terminate Hainline before both investigations were completed and proper approvals obtained. As a matter of law, mere knowledge of Hainline's prior charge does not show that Home Depot's reason for termination is false. *Sanchez v. Henderson,* 188 F.3d 740, 748 (7th Cir.1999) (mere knowledge of the plaintiff's protected activity does not establish a retaliatory motive). If anything, evidence that Home Depot did not want Swaney to discipline Hainline before its investigation was completed and approvals obtained shows that Home Depot was taking steps to ensure that the investigation and termination were proper. This evidence fails to show that Home Depot's reasons for termination were false and does not establish pretext as a matter of law.

<u>Finally</u>, there are no other facts in this case that would show that Home Depot's reasons for terminating Hainline were pretextual. To the extent the EEOC argues that there were flaws in the investigation of Hainline's policy violations – it took too long, was not thorough enough, was conducted by the wrong person, etc. – such arguments all fail show that Home Depot's reasons for terminating her were not its true reasons. Minor inconsistencies and irregularities in the

investigation are irrelevant. Only inconsistencies that go to an employer's purpose or motivation may raise an inference of pretext sufficient to defeat summary judgment. *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995) (failure to follow procedures "does not suggest either that the defendant's proffered reasons for its employment decisions were pretextual, or that the defendant was motivated by illegal discrimination."); *Ingels v. Thiokol Corp.*, 42 F.3d 616, 623 (10th Cir. 1994) ("To the extent there is any inconsistency at all, it does not go to the employer's purpose or motivation, and could not provide a sufficient basis for a jury to find pretext."). Here, none of the inconsistencies that the EEOC may allege raises a material issue of fact. They amount to nothing more than challenges to the way Home Depot investigated and terminated Hainline, not its reasons for doing so.

Likewise, any argument that Hainline should not have been held accountable for her policy violations because other employees including the Human Resources Manager and Store Manager has responsibility for hiring, fails to show pretext as a matter of law. Hainline's argument that she should not be blamed for her policy violations fails to show that her termination was pretextual. As the Tenth Circuit has held, "our inquiry does not review the wisdom or fairness of the employer's proffered reasons." *Rivera v. City & County of Denver,* 365 F.3d 912, 924-25 (10th Cir.2004) "[A]t issue is whether the evidence of Plaintiff's misconduct presented to [the decisionmakers] was so weak that a rational factfinder could infer that [the] expressed reason for terminating Plaintiff must have been pretextual." *Id.* at 925.

Here, Hainline admits that it is <u>her</u> job to recruit, interview, and recommend hiring of employees in her departments. UF 9. She admits that it is part of <u>her</u> job to comply with the Code of Conduct and to make sure other employees also comply with it. UF 7-8. It is also undisputed

that the HR Manager was out of the store during Hainline's violations. UF 21. Hainline cannot avoid responsibility for her violations merely by the fact that other employees besides her also have hiring responsibilities. This evidence does not and cannot show that Home Depot's termination of Hainline was pretextual.

Because the EEOC cannot show that Home Depot's legitimate, non-discriminatory reason for terminating Hainline -- her admitted major work rule violations of company hiring policies – is pretextual, Home Depot is entitled to summary judgment as a matter of law.

**CONCLUSION**

For the reasons set forth above, Home Depot requests that the Court enter and Order granting Home Depot's Motion for Summary Judgment and dismissing the Complaint in its entirety.

Dated: February 19, 2008.

***HALE FRIESEN, LLP***

By:*s/Christine K. Lamb*

Christine K. Lamb
1430 Wynkoop Street, Suite 300
Denver, CO 80202
Telephone: (720) 904-6000
Facsimile: (720) 904-6006
LAMBUSDC@HALEFRIESEN.COM

Attorneys for Defendant Home Depot U.S.A., Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on February 19, 2008, I electronically filed the foregoing **HOME DEPOT'S MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Jennifer Randall
Equal Employment Opportunity Commission
Email: jennifer.randall@eeoc.gov

*s/Patricia Foos*
Patricia Foos
1430 Wynkoop Street, Suite 300
Denver, CO 80202
Telephone: (720) 904-6000
Facsimile: (720) 904-6006