IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Judge

Civil Action No. 06-cv-01950 - LTB - CBS

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

    Plaintiff,

v.

HOME DEPOT, U.S.A., INC., d/b/a The Home Depot, a Delaware corporation,

    Defendant.

___

ORDER
___

This case is before me on Defendant Home Depot U.S.A., Inc.'s ("Home Depot") Motion for Summary Judgment [Doc # 40]. After consideration of the motion and all related pleadings, as well as the case file, I deny the motion for the following reasons.

## I. Facts

In this lawsuit, the Equal Employment Opportunity Commission (the "EEOC") asserts a claim for retaliatory discharge under Title VII based on Home Depot's termination of Connie Hainline ("Hainline") in December of 2004. The following facts are undisputed unless otherwise noted.

Hainline began working for Home Depot as a cashier in 1992. From 1999 to 2001, Hainline worked for Home Depot in the position of regional installation manager. Hainline lost her position as regional installation manager in 2001 when Home Depot changed the requirements for that position to require store manager experience that Hainline did not have. After losing this position, Hainline became a operations assistant store manager for Home Depot.

In March of 2002, Hainline filed a charge of sex discrimination with the EEOC. Among other things, Hainline alleged that Home Depot changed the requirements of the regional installations manager position as a pretext to remove her and other female employees from that position. Hainline retained counsel and attended a mediation session at the EEOC in 2003. Hainline's charge was settled in 2004 as part of a public enforcement action that the EEOC filed against Home Depot. Hainline received her settlement checks from Home Depot in early November of 2004.

In 2004, Hainline was employed by Home Depot as the operations assistant store manager for its store in Evergreen, Colorado. Pat Swaney ("Swaney") was the store manager at the Evergreen, Colorado store, and Amy Burger ("Burger") was the human resources manager. In her position as operations assistant store manager, Hainline was responsible for recruiting, interviewing applicants, and making recommendations to the store manager about hiring for open positions, but the store manager had the ultimate responsibility for all hiring decisions. The human resources manager was responsible for managing the hiring process.

In late August of 2004, Hainline interviewed Michelle Addison (Addison") for a cashier position. Addison was given a conditional offer of employment pending completion of her background check and drug test. Without first checking to see if Addison's background check had been completed, Hainline contacted her and asked her to come to the Evergreen Store so she could complete her new hire paperwork. Addison completed her new hire paperwork on August 30, 2004 and was scheduled to attend orientation the following day. Later that same day, Hainline asserts that she learned for the first time that Addison's background check results had not yet come back. Hainline asserts that she offered to tell Addison not to report to orientation

the following day but was told not do so by Burger on the grounds that doing so would make Home Depot look stupid.  Burger seemingly does not recall this conversation, or at least parts of it.  On August 31, 2004, the same day that she reported for her first day of orientation, Addison's background check results came back showing that she was ineligible for hire due to a felony conviction.

On September 13, 2004, Hainline interviewed Asa Newhouse ("Newhouse") for a night freight team position at Home Depot.  At the time of the interview, Hainline asserts that she was not aware that Newhouse had not passed the sales test required for this position.  Hainline recommended that Newhouse be hired for the night freight team position but in attempting to order his background check Burger determined that Newhouse was not eligible for this position as a result of failing the sales test.  Burger retracted Newhouse's conditional offer of employment, and Home Depot subsequently hired Newhouse as a lot attendant.

Home Depot's Code of Conduct sets forth "major work rule violations" which are defined as "prohibited conduct that will normally result in termination for a first offense."  The party imposing discipline for such a violation is, however, to "consider if it might be appropriate under the circumstances to discipline the violations as minor."  Included in the examples of major work rule violations are the following hiring practices:

> • Assigning an associate to a position before the associate has qualified for the position and passed any appropriate test
>
> • Intentionally allowing new hires to begin work prior to receiving all required pre-employment paperwork, (i.e. negative drug or background screening or before the hire is processed in the AIMS [Associate Information Management] system

A "minor work rule violation" includes "[v]iolating [Home Depot's] policies and procedures as contained in SOP and Compliance Policies that are not otherwise considered a major work rule violation."

Home Depot's Code of Conduct provides that suspicions of code violations must be investigated to determine "whether or not a violation occurred, the nature of the violation, and who committed the violation." In conducting an investigation of code violations, the Code of Conduct advises Home Depot employees to be thorough "so that the determination is based upon facts and not perception, hearsay, or speculation" and to "[b]e sure to give the associate who has been accused of wrongdoing an opportunity to tell his/her side of the situation."

On September 1, 2004, at a meeting regarding the consent decree that was ultimately entered in the EEOC's public enforcement action against Home Depot, Burger discussed the Addison incident with other human resources personnel at Home Depot, including divisional human resources manager Dawn Nichols-Sorenson ("Nichols-Sorenson"). The next day, September 2, 2004, Nichols-Sorenson emailed Burger a "termination worksheet" to complete regarding Hainline. On October 15, 2005, Nichols-Sorenson sent an email to Burger and Home Depot's district manager, Jason Grasser ("Grasser") wherein she stated that "[Hainline] needs to be terminated." Because Hainline had been employed by home Depot for over ten years, her termination had to be approved by the vice president of human resources and the divisional vice president.

After Nichols-Soreson's October 15, 2005 email, Burger obtained witness statements from Addison and Newhouse, among others. Then, on November 24, 2004, Burger, Nichols-Sorenson, and Grasser met with Hainline to discuss the incidents involving Addison and

4

Newhouse. At this meeting, Hainline indicated that she did not feel she had violated Home Depot's Code of Conduct with respect to the incident involving Addison because she did not know that her background check had not been completed and that she did not feel that she had violated Home Depot's Code of Conduct with respect to the incident involving Newhouse because she did not know that he had not passed the required sales test. At the conclusion of the November 24, 2004 meeting, Hainline was placed on administrative leave.

Home Depot terminated Hainline on December 3, 2004. Hainline's corresponding discipline notice states that she was being terminated for two major Code of Conduct violations:

> The first was for knowingly sending an associate to orientation without having received a background check. The second was for involvement in hiring an applicant for a sales position after knowing that the applicant had failed the sales test.

Hainline signed the discipline notice and wrote "Do not agree[.] This is a violation of my protected conduct agreement per the EEOC." Home Depot is unable to identify any other employees who were terminated for similar violation of its Code of Conduct prior to Hainline's December 3, 2004 termination.

## II. Standard for Review

The very purpose of a summary judgment motion under Fed. R. Civ. P. 56 is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Rule 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial. *Celotex*, 477 U.S. at 323; *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir. 1992). Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. *Otteson v. U.S.*, 622 F.2d 516, 519 (10th Cir. 1980); Fed.R.Civ.P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the pleadings themselves." *Celotex*, 477 U.S. at 324.

If a reasonable juror could not return a verdict for the non-moving party, summary judgment is proper and there is no need for a trial. *Celotex*, 477 U.S. at 323. The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). However, summary judgment should not enter if, viewing the evidence in a light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party. *Anderson Liberty Lobby, Inc.*, 477 U.S. at 252; *Mares*, 971 F.2d at 494.

### III.  Analysis

To establish a prima facie case of retaliation, a plaintiff must show (1) that plaintiff engaged in protected opposition to discrimination; (2) that plaintiff suffered an adverse employment action; and (3) that there is a causal connection between the protected activity and

the adverse employment action.  *O'Neal v. Ferguson Constr. Co.,* 237 F.3d 1248, 1252 (10th Cir. 2001).  Once a plaintiff establishes a prima facie case of retaliation, the defendant must articulate a legitimate, nondiscriminatory reason for the adverse employment action . *Id.*  The plaintiff must then respond by demonstrating that the defendant's asserted reasons for the adverse action are pretextual.  *Id.*  So long as the plaintiff presents evidence of pretext upon which a jury could infer retaliatory motive, the case should go to trial.  *Plotke v. White,* 405 F.3d 1092, 1103 (10th Cir. 2005).

Home Depot first argues that the EEOC cannot establish a prima facie case for retaliation because it cannot demonstrate (1) that Hainline engaged in protected activity after filing her initial charge of discrimination in March of 2002, or (2) that there is a causal connection between any protected activity and Hainline's termination in December of 2002.  I disagree.

Under Title VII, it is unlawful for an employer to retaliate against an employee because that employee has opposed an unlawful employment practice or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).  Home Depot argues that the EEOC cannot satisfy the protected activity requirement for retaliation claims because after filing her initial charge of discrimination in 2002, Hainline merely awaited the resolution of her charge.  This argument defies logic because the filing of a charge of discrimination with the EEOC constitutes protected activity in and of itself by the plain language of the governing statute.  *See also Proctor v. United Parcel Service,* 502 F.3d 1200, (10th Cir. 2007) ("[Plaintiff] clearly engaged in protected activity when he filed administrative charges with the ... EEOC ... alleging disability discrimination ....").  Whether Hainline engaged in other protected activity after filing her initial charge of

7

discrimination is relevant to the causation element of a prima facie case for retaliation and will be considered in that context. The EEOC has, however, satisfied the first element of a prima facie case for retaliation against Hainline.

To establish that a causal connection exists between Hainline's charge of sex discrimination and her termination, the EEOC may proffer "evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Proctor, supra* (*quoting O'Neal,* 237 F.3d at 1253). "Unless there is very close temporal proximity between the protected activity and the retaliatory conduct, the plaintiff must offer additional evidence to establish causation." *O'Neal*, 237 F.3d at 1253. "[A] one and one-half month period between protected activity and adverse action may, by itself, establish causation" but "a three-month period, standing alone, is insufficient to establish causation." *Anderson v. Coors Brewing Co.,* 181 F.3d 1171, 1179 (10th Cir. 1999).

In determining whether the EEOC may rely solely on temporal proximity to satisfy the causation element of a claim for retaliation, I must first identify the last protected activity in which Hainline engaged. The EEOC argues that the finalization of the settlement of Hainline's discrimination claim against Home Depot in October of 2004 and Hainline's receipt of the corresponding settlement checks in November of 2004 constitute protected activity. Home Depot argues that these events do not constitute protected activity because they involved no activity on the part of Hainline. This argument ignores Hainline's ucontroverted assertion in her affidavit that she "entered [into] a private settlement agreement with Home Depot, as negotiated by [her]counsel" that "was finalized in October 2004." Hainline's active involvement, through her attorney, in negotiating a settlement of her discrimination claim as part of the larger

8

settlement of the EEOC's public enforcement action against home Depot distinguishes this case from *Clark County School Dist. v. Breeden,* 532 U.S. 268, 273 (2001), wherein the Supreme Court noted with approval that court of appeal's rejection of "respondent's utterly implausible suggestion that the EEOC's issuance of a right-to-sue letter - an action in which the employee takes no part - is a protected activity of the employee."

Home Depot also argues that settlement does not constitute protected activity as a matter of law but it appears that there is no published authority from the Tenth Circuit or elsewhere specifically addressing this question. It is logical to assume, however, that since alleging discrimination constitutes protected activity, then negotiating and securing a settlement that resolves such allegations likewise constitutes protected activity. *See Miller v. Fairchild Indus., Inc.,* 797 F.2d 727 , 731-2 (9th Cir. 1986) (causal connection for prima facie case established, in part, by the fact that plaintiffs' layoffs occurred less than two months after they negotiated EEOC settlement agreements). I therefore conclude that the negotiation and finalization of Hainline's discrimination claim in October 2004, though not her receipt of the corresponding settlement checks in November of 2004, constitutes protected activity. As such, a period of 8-9 weeks, at most, passed between Hainline's protected activity and her termination by Home Depot. This fact, standing alone, may be sufficient to establish causation. *See Pastran v. K-Mart Corp.,* 210 F.3d 1201, 1203-1205 (10th Cir. 2000) (agreeing with district court's conclusion that plaintiff made prima facie case of retaliation by showing he was terminated approximately 8-10 after complaining of discrimination). I further conclude that the EEOC has presented sufficient additional evidence to establish the requisite causal connection in any event.

In addition to temporal proximity, the EEOC argues that the following evidence supports

a finding of a causal connection between Hainline's protected activity and her termination:

> ... evidence that Hainline did not commit either major work rule violation for which she was purportedly terminated, that Home Depot did not handle the investigation and termination of Hainline as required by its own policies; that Home Depot acted contrary to company practice in terminating Hainline for the alleged violations of company hiring policy, and that Hainline's protected activity in participating in the 2004 lawsuit and settlement of the lawsuit was discussed during Home Depot's investigation of her alleged violations ....

Evidence of pretext may be considered in the prima facie stage of a retaliation claim. *Proctor*, 502 F.3d at 1209. A plaintiff can show that a defendant-employer's proffered reasons are a pretext for unlawful retaliation by revealing "such weaknesses, implausibilities, incoherencies, or contradictions in the employer's proffered reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323 (10th Cir. 1997).

I find and conclude that the EEOC has presented sufficient evidence to allow a reasonable factfinder to reject Home Depot's assertion that it terminated Hainline because she committed two major work rule violations in her handling of the prospective employment of Addison and Newhouse. Among other things, the fact that discipline for Hainline was first discussed at a meeting regarding the consent decree that resolved the EEOC's public enforcement action against Home Depot and that Hainline's involvement in that action was discussed throughout the investigation of her conduct could support a finding of pretext. *See Pastran,* 210 F.3d at 1206 (discussions concerning events surrounding prior adverse employment action and likelihood that plaintiff would sue during deliberations of whether to terminate plaintiff might be considered circumstantial evidence of retaliatory motive). The fact that the decision to terminate Hainline was arguably made prior to a complete investigation and that

Home Depot cannot identify any other employees who were terminated for similar violations of Home Depot's Code of Conduct could also support such a finding.

This evidence, combined with the evidence of temporal proximity previously discussed, is not conclusive but certainly raises an issue of material fact as to whether there was a causal connection between Hainline's protected activity in pursuing a charge of sex discrimination and her termination. Accordingly, I conclude that Home Depot is not entitled to summary judgment on the basis that the EEOC cannot establish a prima facie case of retaliation. Because I considered evidence of pretext in reaching this conclusion, I likewise conclude that Home Depot is not entitled to summary judgment on the basis that the EEOC cannot establish pretext.

For the reasons set forth above, IT IS HEREBY ORDERED that Home Depot's Motion for Summary Judgment [Doc # 40] is DENIED.

Dated: July   11  , 2008 in Denver, Colorado.

                                        BY THE COURT:

                                          s/Lewis T. Babcock
                                        LEWIS T. BABCOCK, JUDGE